1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                       * * *
                                             )
7   TERENCE BOCK,                            )
                                             )
8                    Plaintiff,              )
                                             )
9    v.                                      )
                                             )
10  SIENA GOLF, LLC; CHRISTOPHER             )         2:-04-cv-00311-PMP-GWF
    SMITH,                                   )
11                                           )         O R D E R
                     Defendants.             )
12  _____ )
                                             )
13  SIENA GOLF, LLC,                         )
                                             )
14                   Third-party Plaintiff,  )
                                             )
15  v.                                       )
                                             )
16  SCHMIDT-CURLEY DESIGN INC.;              )
    SEMA GOLF, LLC,                          )
17                                           )
                     Third-party Defendants. )
18  _____ )

19          Presently before the Court are four motions for summary judgment and one

20  motion in limine.  Defendant Siena Golf, L.L.C. ("Siena") filed a Motion for Partial

21  Summary Judgment as to the Issue of Plaintiff's Comparative Negligence (Doc. #111) on

22  March 28, 2006.  Plaintiff Terence Bock filed Plaintiff's Opposition to Siena Golf, LLC's

23  Motion for Partial Summary Judgment as to the Issue of Plaintiff's Comparative

24  Negligence; and Cross Motion in Limine to Exclude Any Evidence of Alcohol, Bachelor

25  Party, Gentlemen's Club and Partying (Doc. #117) on April 6, 2006.  Defendant Siena filed

26  a Reply to Plaintiff's Response to Defendant Siena Golf, L.L.C.'s Motion for Partial

Summary Judgment as to the Issue of Plaintiff's Comparative Negligence and a Response to

Plaintiff's Cross Motion in Limine to Exclude Any Evidence of Alcohol, Bachelor Party,

Gentlemen's Club and Partying (Doc. #133) on April 24, 2006.  Plaintiff filed a Reply to

Siena Golf, LLC's Response to Cross Motion in Limine to Exclude Any Evidence of

Alcohol, Bachelor Party, Gentlemen's Club and Partying (Doc. #135) on May 2, 2006.

Also before the Court is Defendant Siena's Motion for Partial Summary

Judgment as to the Issue of Plaintiff's Wage Loss (Doc. #112), filed on March 28, 2006.

Plaintiff filed an Opposition (Doc. #119) on April 10, 2006.  Defendant Siena filed a Reply

(Doc. #134) on April 24, 2006.

Also before the Court is Third-Party Cross-Defendant Schmidt-Curley Design,

Inc.'s ("Schmidt") Motion for Summary Judgment (Doc. #113), filed on March 28, 2006.

Defendant Siena filed a Response to Cross-Defendant Schmidt-Curley Design, Inc.'s

Motion for Summary Judgment (Doc. #122) on April 18, 2006, and another Response (Doc.

#132) on April 21, 2006.  Schmidt filed a Reply Memorandum of Points and Authorities of

Schmidt-Curley Design, Inc. in Support of Motion for Summary Judgment (Doc. #136) on

May 2, 2006.

Finally, Third-Party Defendant Sema Golf d/b/a Sema Construction ("Sema")

filed a Motion for Summary Judgment (Doc. #114) on March 28, 2006.  Defendant Siena

filed Defendant/Third-Party Plaintiff Siena Golf, L.L.C.'s Response to Third-Party

Defendant Sema Golf, L.L.C.'s Motion for Summary Judgment (Doc. #121) on April 18,

2006.  Sema filed a Reply to Siena Golf, LLC's Response to Sema's Motion for Summary

Judgment (Doc. #137) on May 3, 2006.

**I.      BACKGROUND**

In April 2003, Plaintiff visited Las Vegas, Nevada with a group of friends,

Defendant Chris Smith ("Smith"), John Agne ("Agne"), Damien Johnston, Bryan Mills,

Dustin Batchelor, Aaron Rumrell, Whitney Lyman, Eric June, and Morgan Roberts.  (Def.

1   Siena Golf, L.L.C.'s Mot. for Partial Summ. J. as to the Issue of Pl.'s Comparative

2   Negligence ["Siena Mot. on Negligence"], Ex. A at 9-10, Ex. B at 74.)  The friends

3   gathered in Las Vegas for a bachelor party for Agne.  (Siena Mot. on Negligence, Ex. A at

4   10.)

5          Plaintiff arrived in Las Vegas late Thursday, April 3, 2003.  (Id. at 78.)  Smith

6   also arrived in Las Vegas on Thursday and consumed approximately six alcoholic

7   beverages.  (Siena Mot. on Negligence, Ex. C at 34.)  The next day, the group relaxed by

8   the hotel's pool and gambled.  (Siena Mot. on Negligence, Ex. A at 79.)  The group stayed

9   up playing cards in the hotel room and consuming alcohol until approximately 2:00 or 3:00

10  a.m.  (Siena Mot. on Negligence, Ex. A at 79, Ex. B at 72-73.)  Smith estimated he had

11  approximately three drinks during the day and four during the evening.  (Siena Mot. on

12  Negligence, Ex. C at 36.)  Some of the group went to gentlemen's clubs, although neither

13  Smith nor Plaintiff went to the clubs.  (Siena Mot. on Negligence, Ex. B at 74.)

14         On Saturday morning, the group had some snacks at the hotel and caught an 8:30

15  a.m. bus to Defendant Siena's golf course to play golf.  (Siena's Mot. on Negligence, Ex. A

16  at 10-11, Ex. C at 9.)  The party started golfing at approximately 9:00 a.m.  (Id. at 22.)

17  During the round of golf, Plaintiff rode in a golf cart with Smith.  (Id. at 11.)  Throughout

18  the day, Plaintiff and Smith switched who was driving the cart.  (Id. at 12.)  According to

19  Smith, he and Plaintiff had one to two alcoholic beverages during the first nine or ten holes.

20  (Siena's Mot. on Negligence, Ex. B at 19.)  As the party made the turn at the ninth hole,

21  Plaintiff and Smith purchased beer.  (Siena's Mot. on Negligence, Ex. A at 21, Ex. B at 19-

22  20.)  Nothing unusual occurred during the first nine holes of play.  (Siena's Mot. on

23  Negligence, Ex. B at 19.)

24         As the group left the tenth hole and proceeded to the eleventh tee, Smith was

25  driving the cart.  (Siena's Mot. on Negligence, Ex. A at 12.)  The cart path from the tenth

26  hole to the eleventh tee was steep and had a sharp right downhill turn that slopes from right

1    to left.  (Id. at 12-13.)  As Smith drove through the turn, the cart rolled over to the left.  (Id.

2    at 13.)  Plaintiff fell through the driver side opening.  (Id. at 13-14, 88.)  The cart rolled

3    over onto Plaintiff's leg, breaking it and pinning his leg between the cart and the pavement.

4    (Id.)  Plaintiff has had several surgeries as a result of his injuries.  (Siena Mot. on

5    Negligence, Ex. A at 25, 105.)

6         Plaintiff testified he believed the accident was caused by Smith driving too fast

7    through an unsafe sharp turn at the bottom of a hill with an incorrectly sloped bank.  (Id. at

8    18.)  Smith testified he believed he caused the accident by driving too fast and hitting the

9    brakes too hard.  (Siena Mot. on Negligence, Ex. B at 64.)  Both Plaintiff and Smith

10    testified they did not believe Smith was impaired due to alcohol consumption at the time of

11    the accident.  (Siena Mot. on Negligence, Ex. A at 23, Ex. B at 20.)  Smith testified he

12    believes he is "fairly tolerant" of the effects of alcohol but he may have been "a little bit

13    tired" at the time of the accident.  (Siena's Mot. on Negligence, Ex. C at 8-9.)

14         Third Party Defendant Schmidt was the original architect and designer of the golf

15    course, including the routing of the golf cart path layout.  (Third-Party Sema Golf d/b/a

16    Sema Construction's Mot. for Summ. J. ["Sema Mot."], Exs. A, B at 43; Def./Third-Party

17    Pl. Siena Golf, L.L.C.'s Resp. to Third-Party Def. Sema Golf, L.L.C.'s Mot. for Summ. J.

18    ["Pl.'s Opp'n to Sema Mot."], Ex. D at 18-19.)  Among Schmidt's specifications for cart

19    paths was that "[i]ncreased widths shall be necessary at sharp turns, two-way traffic areas

20    and around the clubhouse."  (Pl.'s Opp'n to Sema Mot., Ex. B)  Third Party Defendant

21    Sema constructed the golf course according to Schmidt's original plans.  (Sema Mot., Ex. E

22    at 67, Ex. F at 71.)

23         Some time after the course was completed but before the accident, Siena altered

24    the cart path between the tenth and eleventh holes.  (Mot. for Summ. J. [Doc. #113]

25    ["Schmidt Mot."], Ex. A at 19.)  Customers at the golf course had been cutting the corner

26    between the tenth and eleventh holes by driving through a planter rather than taking the cart

1  path around the turn, stirring up debris from the planter when they reentered the path.  (Pl.'s

2  Opp'n to Sema Mot., Ex. E at 20-21.)  Siena decided to pave the area to prevent debris from

3  being tracked onto the cart path and to keep customers driving on the solid surface of the

4  cart path.  (Schmidt Mot., Ex. A at 22-23; Pl.'s Opp'n to Sema Mot., Ex. E at 20-21.)  Siena

5  did not consult Schmidt regarding the alteration.  (Schmidt Mot., Ex. A at 23.)  Siena hired

6  a company called Performance Concrete to make the alteration to the cart path.  (Id.)

7          According to Siena's expert, Michael Hurzdan ("Hurzdan"), the golf cart path as

8  originally designed was free from defects.  (Schmidt Mot., Ex. C at 2.)  Plaintiff's expert,

9  Paul Gogulski ("Gogulski"), opined that the cart path "is an obvious and severe hazard by

10  distinction of its severe slopes, blind spots, extreme turning radius, general configuration,

11  and lack of adequate warnings."  (Pl.'s Opp'n to Sema Mot., Ex. G at 4.)  Gogulski opined

12  the path was a highway design engineer's "worst nightmare, namely a steep radius curve

13  with a reverse side slope and descending in the direction of travel."  (Sema Mot., Ex. I at 4.)

14  Gogulski stated the hazard in the path was "inherent in the design."  (Pl.'s Opp'n to Sema

15  Mot., Ex. G at 5.)

16          At the time of the accident, Plaintiff was working for EMC Corporation as a

17  senior account manager selling hardware and software services to large technology

18  accounts.  (Def. Siena Golf, L.L.C.'s Mot. for Partial Summ. J. as to the Issue of Pl.'s Lost

19  Wages [Siena's Mot. on Wages"], Ex. A at 54-55.)  Plaintiff was off work for a total of six

20  months after the accident.  (Id. at 63.)  Plaintiff ceased working for EMC on August 20,

21  2004.  (Id.)  Plaintiff thereafter worked for Zantaz as a sales executive.  (Id.)  While he was

22  at EMC Corporation, Plaintiff earned between $85,000 to $100,000 in salary, plus bonuses

23  and commissions for a total compensation of $300,000 to $450,000.  (Id. at 58-59.)  At

24  Zantaz, Plaintiff's base salary is $100,000, with a target compensation of $200,000.  (Id. at

25  65.)  Plaintiff's expert estimated Plaintiff's past and future lost income as $1,124,999.

26  (Siena Mot. on Wages, Ex. F.)

1    Plaintiff initiated suit against Defendants Siena and Smith for negligence and

2  premises liability.  (Pet. for Removal [Doc. #1], Compl.)  Smith and Plaintiff subsequently

3  entered into a settlement agreement for $1.3 million, and Smith filed a motion for a good

4  faith settlement determination.  (Siena Mot. on Wages, Ex. G.)  In that motion, Smith

5  asserted Plaintiff's past and future lost income claim is worth "approximately $350,000."

6  (Id. at 2.)  The motion also stated Plaintiff was a "fault-free passenger," and Smith's fault in

7  the accident "may be as high as 85%."  (Id.)  Plaintiff filed a Joinder in the motion.

8  (Terence Bock's Joinder in Def. Christopher Smith's Mot. for Good Faith Settlement

9  Determination [Doc. #44].)  The Court granted the motion and dismissed Smith from this

10  action.  (Mins. of Proceedings [Doc. #78]; Stip. & Order of Dismissal [Doc. #82].)

11    Siena now moves for partial summary judgment, asserting the evidence of

12  Smith's alcohol consumption combined with Plaintiff's knowledge of Smith's activities

13  mandates the Court give a contributory negligence jury instruction at trial.  Plaintiff

14  responds that there is no evidence in the record that Smith or Plaintiff were impaired by

15  alcohol at the time of the accident.  Plaintiff also asserts Siena's motion is a premature

16  request for a jury instruction and the Court should defer ruling on Siena's request until the

17  close of evidence at trial.  Further, Plaintiff moves in limine to exclude under Federal Rules

18  of Evidence 402, 403, and 404 any evidence relating to the consumption of alcohol,

19  attending a bachelor party, going to a gentlemen's club, or partying.  Plaintiff argues there

20  is no evidence Smith was intoxicated at the time of the accident, and that any evidence

21  about drinking or partying is irrelevant and prejudicial.  Siena responds that Smith and

22  Plaintiff's physical and mental condition are relevant to determining the accident's cause

23  and the evidence's probative value outweighs its prejudicial value.

24    Siena also moves for partial summary judgment as to Plaintiff's lost wages.

25  Siena asserts that when Defendant Smith brought a motion for a good faith settlement

26  determination which Plaintiff joined, the parties represented Plaintiff's lost income as

1   $350,000.  Siena asserts Plaintiff is therefore estopped from arguing his lost wages were

2   greater than $350,000.  Plaintiff responds that Siena previously accepted Plaintiff's expert

3   report on lost wages and thus did not attempt to obtain its own economic damages expert

4   until this year.  This Court denied Siena's request to notice an expert beyond the deadline.

5   Plaintiff contends Siena's claims that Plaintiff misled Siena as to his lost wages is an

6   attempt to overcome Siena's own failure to obtain an economic damages expert.

7          Third Party Defendants Schmidt and Sema move for summary judgment, both

8   asserting that the defect in the cart path was caused by the changes Siena made to the path,

9   that they had no involvement in the changes to the cart path, and therefore no genuine issue

10  of fact remains that Schmidt's original design and Sema's construction of the golf course

11  were not dangerous and did not cause the accident.  Siena responds that Sema did not

12  construct the cart path at the accident site in conformity with Schmidt's plans because it did

13  not increase the path's width at the tight turn as the specifications required.  Siena contends

14  that because Sema did not increase the width as required, Siena did so later using another

15  contractor, but followed Schmidt's design specifications.  Siena contends the alleged defect

16  in the cart path existed at the time of original construction and not as a result of the

17  modification to the cart path, and that Plaintiff's expert opined that the cart path is

18  inherently hazardous.  Siena contends there is no testimony that the accident occurred on

19  the modified portion of the path or that the modification caused or contributed to the

20  accident.

21  **II.      LEGAL STANDARDS**

22          Summary judgment is appropriate if "the pleadings, depositions, answers to

23  interrogatories, and admissions on file, together with the affidavits, if any" demonstrate

24  "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

25  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which

26  facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All

7

1   justifiable inferences must be viewed in the light most favorable to the non-moving party.

2   County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

3            The party moving for summary judgment bears the initial burden of showing the

4   absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212

5   F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond

6   the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.

7   Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

8   **III.        MOTION FOR SUMMARY JUDGMENT - NEGLIGENCE**

9            Siena moves for summary judgment, asserting it is entitled to a comparative

10   negligence jury instruction because Smith was affected by alcohol and had stayed up late

11   the night before, and Plaintiff was aware of Smith's condition.  Siena thus argues Plaintiff

12   was negligent by riding in a golf cart with a driver he knew to be impaired by alcohol and

13   sleep deprivation.  Plaintiff responds that Siena's motion is premature, and that the evidence

14   does not support a finding that Smith was impaired.

15            The Court will deny without prejudice Siena's motion.  Siena does not seek

16   summary judgment, but rather asks for a jury instruction.  The Court will settle jury

17   instructions at trial based on the evidence presented to the jury.  Siena may renew its request

18   for a comparative negligence instruction when the Court and the parties settle jury

19   instructions if the evidence supports such an instruction.

20   **IV.        MOTION IN LIMINE**

21            Plaintiff moves in limine to exclude from trial any evidence of partying, alcohol

22   consumption, that the friends were in Las Vegas to attend a bachelor party, or that some of

23   the attendees went to gentlemen's clubs.  Plaintiff contends such evidence is irrelevant

24   because Smith was not impaired, and the evidence is prejudicial and meant unfairly to

25   portray Plaintiff in a bad light.  Siena responds that such evidence is relevant because it

26   tends to show Smith's physical and mental condition on the day of the accident, and the

1   evidence's prejudicial value does not substantially outweigh its probative value.

2   Evidence is relevant if it has "any tendency to make the existence of any fact that

3   is of consequence to the determination of the action more probable or less probable than it

4   would be without the evidence." Fed. R. of Evid. 401. Irrelevant evidence is inadmissible.

5   Fed. R. Evid. 402. Federal Rule of Evidence 403 provides that even relevant evidence may

6   be excluded "if its probative value is substantially outweighed by the danger of unfair

7   prejudice, confusion of the issues, or misleading the jury . . . ." The Rule is not designed to

8   exclude any prejudicial evidence, only "unfairly" prejudicial evidence substantially

9   outweighed by its probative value. United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir.

10  2000). "[T]he application of Rule 403 must be cautious and sparing. Its major function is

11  limited to excluding matter of scant or cumulative probative force, dragged in by the heels

12  for the sake of its prejudicial effect." Id. Evidence is unfairly prejudicial when it has an

13  "'undue tendency to suggest decision on an improper basis, commonly, though not

14  necessarily, an emotional one.'" Id. (quoting Advisory Committee Notes to Federal Rule of

15  Evidence 403). The balancing of the unfair prejudice and probative value lies within the

16  district court's discretion. United States v. Larios, 640 F.2d 938, 941 (9th Cir. 1981).

17  The Court will deny in part and grant in part Plaintiff's motion in limine. Smith

18  testified he believed he was driving too fast and hit the brakes too hard, leading to the

19  accident. Smith's physical and mental condition at the time of the accident is relevant to

20  determining how much of the accident was due to Smith's negligent operation of the cart

21  versus the cart path's alleged defects. Plaintiff and Smith's opinions that Smith was not

22  impaired by alcohol do not foreclose the possibility that alcohol combined with little sleep

23  affected Smith's ability to operate the cart safely. The Court therefore will deny Plaintiff's

24  motion as it relates to "partying," the bachelor party, or alcohol consumption. However, the

25  Court will grant Plaintiff's motion with respect to any reference to members of the bachelor

26  party visiting gentlemen's clubs. Such testimony is irrelevant because neither Plaintiff nor

9

1    Smith visited the gentlemen's club the night before the accident, and going to a gentlemen's

2    club has no relation to the accident involving Smith and Plaintiff.  Such testimony has little

3    to no probative value and is substantially outweighed by the prejudicial effect of casting a

4    negative light on the bachelor party attendees, including Plaintiff and Smith by association.

5    **V.          MOTION FOR SUMMARY JUDGMENT - LOST WAGES**

6               Siena moves for partial summary judgment, asserting Plaintiff is judicially

7    estopped from claiming damages in excess of $350,000.  Siena argues that in joining

8    Defendant Smith's motion for good faith settlement, Plaintiff represented to the Court that

9    his lost wages claim was worth $350,000.  Siena argues Plaintiff cannot now assert greater

10   lost wage damages after using the $350,000 figure to induce a settlement and an order from

11   this Court approving the settlement.  Siena argues that if Plaintiff's wage loss actually is

12   over $1 million, Defendant Smith did not pay his fair share of damages in the settlement

13   agreement.  Siena also argues Plaintiff is collaterally estopped from arguing his wage loss

14   was greater than $350,000 because Plaintiff fully litigated that matter with Defendant

15   Smith.

16              Plaintiff responds that although he joined the motion for good faith settlement

17   determination, he did not represent to the Court or otherwise affirm Smith's assertion that

18   future lost income was capped at $350,000.  Plaintiff argues he was only advising the Court

19   he did not oppose the motion because Smith was tendering his $1.3 million policy limits.

20   Plaintiff further argues that Siena's former counsel stated he agreed Plaintiff's lost wages

21   were at least $1.1 million, and that Siena was making the strategic choice to challenge

22   liability and not damages.  Plaintiff asserts this is why Siena did not timely name an

23   economic damages expert, and that it is only since Siena has hired new counsel that it has

24   attempted to challenge Plaintiff's lost wages damages.

25   ///

26   ///

1        Plaintiff's expert, Terrence M. Clauretie, Ph.D. ("Clauretie"), issued his report on

2   February 4, 2005.  (Siena Mot. on Negligence, Ex. F.)  Clauretie estimated Plaintiff's past

3   and future lost wages damages as $1,124,999.  (Id.)  According to Plaintiff, Siena's attorney

4   at the time made a strategic decision not to retain a damages expert to refute Plaintiff's lost

5   wages claim.  (Pl.'s Opp'n to Siena Golf, LLC's Mot. for Partial Summ. J. as to the Issue of

6   Pl.'s Wage Loss, Sullivan Aff. at 2.)  Plaintiff's attorney states by affidavit that after

7   receiving Clauretie's report, Siena's prior attorney stated that Clauretie was a credible and

8   fair expert and Siena would not object to his opinions, choosing instead to focus on

9   challenging liability.  (Id.)  Plaintiff's attorney further states at no time did he ever advise

10  Siena or its attorney that Plaintiff was limiting his damages claim to $350,000.  (Id.)

11       On March 7, 2005, Defendant Smith filed a motion for good faith settlement

12  determination.  (Def. Christopher Smith's Mot. for Good Faith Settlement Determination

13  [Doc. #38].)  In the motion, Smith asserted Plaintiff's "disability-related lost income claim,

14  past and future, is approximately $350,000."  (Id. at 2.)  Smith's motion stated that although

15  Plaintiff valued the case at over $2.5 million and Smith could be up to eight-five percent at

16  fault, the parties had reached a settlement for Smith's insurance policy limits of $1.3

17  million.  (Id. at 2-3.)  On March 14, 2005, Plaintiff filed a joinder in Smith's motion.

18  (Terence Bock's Joinder in Def. Christopher Smith's Mot. for Good Faith Settlement

19  Determination [Doc. #44].)  In Plaintiff's Joinder, he neither objected to nor specifically

20  adopted any of the assertions in the motion, stating only that he "hereby joins in" the

21  motion.  (Id. at 2.)  Siena made no objection to the motion.  This Court conditionally

22  granted the motion pending an opportunity for the parties to determine whether Defendant

23  Smith had any other available insurance coverage.  (Mins. of the Ct. [Doc. #78].)  On

24  August 19, 2005, Defendant Smith was dismissed from the case.  (Stip. & Order of

25  Dismissal [Doc. #82].)

26  ///

1    On November 23, 2005, Siena moved to reopen discovery and to continue a

2  scheduled settlement conference.  (Def. Siena Golf, LLC's Mot. to Reopen Disc. and

3  Continue Settlement Conference [Doc. #94].)  Siena requested further discovery on

4  Plaintiff's medical treatment since the close of discovery, as well as documents supporting

5  Plaintiff's lost wages claim.  (Id. at 6.)  Siena contended that Plaintiff's employment records

6  did not support his claim that his injuries forced him from his prior job.  (Id.)  The Court

7  took the motion under submission pending a scheduled settlement conference.  (Order [Doc.

8  #101] dated Jan. 13, 2006.)

9    Siena filed another request to reopen discovery, and attempted to designate as an

10  expert witness an economist on Plaintiff's wage loss claim.  (Def. Siena Golf, LLC's Am.

11  Mot. to Reopen Disc. (Fourth Request) [Doc. #103].)  Plaintiff objected, arguing discovery

12  was completed and Siena had failed to designate experts by the deadline.  (Pl.'s Opp'n to

13  Def. Siena Golf, LLC's Am. Mot. to Reopen Disc. (Fourth Request) [Doc. #104].)  This

14  Court granted Siena's motion in part, permitting discovery on Plaintiff's recent medical

15  treatment and ordering Plaintiff to produce his employment files from his employers, but

16  denied the motion with respect to permitting depositions of Plaintiff's employers or naming

17  an economic damages expert.  (Mins. of Proceedings [Doc. #108]; Order [Doc. #109] dated

18  Mar. 14, 2006; Order [Doc. #118] dated Apr. 10, 2006.)  Siena now moves to estop Plaintiff

19  from claiming lost wage damages beyond $350,000.

20    **A.  Judicial Estoppel**

21    "[F]ederal law governs the application of judicial estoppel in federal court," even

22  when the court is sitting in diversity.  Rissetto v. Plumbers & Steamfitters Local 343, 94

23  F.3d 597, 603 (9th Cir. 1996).  "Judicial estoppel, sometimes also known as the doctrine of

24  preclusion of inconsistent positions, precludes a party from gaining an advantage by taking

25  one position, and then seeking a second advantage by taking an incompatible position."  Id.

26  at 600.  It is an equitable doctrine intended "to protect the integrity of the judicial process

1    by preventing a litigant from 'playing fast and loose with the courts.'"   Wagner v. Prof'l

2    Eng'rs in Cal. Gov't, 354 F.3d 1036, 1044 (9th Cir. 2004) (quoting Russell v. Rolfs, 893

3    F.2d 1033, 1037 (9th Cir.1990) (internal quotation marks omitted)).   Judicial estoppel

4    applies when a party's change in position is "'tantamount to a knowing misrepresentation to

5    or even fraud on the court,'" but not when inconsistent positions are the result of

6    inadvertence or mistake.  Johnson v. State, Oregon Dep't of Human Res., Rehab. Div., 141

7    F.3d 1361, 1369 (9th Cir. 1998) (quoting Ryan Operations G.P. v. Santiam-Midwest

8    Lumber Co., 81 F.3d 355, 362-63 (3d Cir. 1996) (citations and internal quotations

9    omitted)).

10          Among the factors a court should consider in determining whether to judicially

11   estop a litigant are whether the party's later position is "clearly inconsistent" with its earlier

12   position; whether the party successfully persuaded a court to accept that party's earlier

13   position so that if a court accepted the later inconsistent position it would create the

14   perception that the party misled either the first or second court; and whether the party

15   seeking to assert an inconsistent position would derive an unfair advantage or impose an

16   unfair detriment on the opposing party.  New Hampshire v. Maine, 532 U.S. 742, 750-51

17   (2001).  These factors are not exhaustive, and a court may consider any relevant

18   circumstances.  Id. at 751.  Whether to judicially estop a litigant lies within the court's

19   discretion.  Id. at 750; United States v. Ruiz, 73 F.3d 949, 953 (9th Cir. 1996).

20          The Court, in its discretion, will not judicially estop Plaintiff from claiming more

21   than $350,000 in lost wages.  The Court concludes that to the extent Plaintiff's joinder in

22   Smith's motion for good faith settlement could be deemed an adoption of every statement

23   therein, Plaintiff's failure to clarify in the joinder that he was seeking greater lost wage

24   damages was the result of inadvertence or mistake.  Plaintiff did not specifically adopt the

25   representations made in Smith's motion for good faith settlement, and offered no

26   affirmative representations of his own that his lost wages were approximately $350,000.

13

1    Preferably, Plaintiff would have joined the motion but clarified his own position on the

2    relevant numbers.  However, the Court does not find Plaintiff's silence on the matter

3    amounts to chicanery or a fraud on the Court or unfair surprise to Siena.  Plaintiff has

4    presented uncontradicted evidence that Siena's former counsel indicated to Plaintiff that

5    Siena was aware of Clauretie's report and had no intention of challenging his opinion on

6    lost wages.  Further, the Court made no express finding adopting the $350,000 lost wages

7    figure.  The essence of the settlement with Defendant Smith was that he faced multi-million

8    dollar liability, he tendered all available insurance policy limits to settle the case, and he did

9    not have substantial personal assets with which to negotiate further.  Although Siena

10   suggests it may have objected had the higher lost wages amount been used, Siena does not

11   explain how a higher lost wages amount suggests the settlement was not in good faith.  The

12   Court concludes this is not one of those rare cases in which judicial estoppel is appropriate

13   to preserve the integrity of the judicial process, and the Court therefore will deny Siena's

14   motion on this ground.

15            **B.  Issue Preclusion**

16            "Issue preclusion bars the relitigation of issues actually adjudicated in previous

17   litigation between the same parties."  Littlejohn v. United States, 321 F.3d 915, 923 (9th

18   Cir. 2003).  Nevada applies issue preclusion if: "1) the issue decided in prior litigation is

19   identical to the issue presented in the current litigation; 2) the initial ruling was on the

20   merits and is final; and 3) the party against whom the judgment is asserted was a party or in

21   privity with a party to the prior litigation."  Dias v. Elique, 436 F.3d 1125, 1129 (9th Cir.

22   2006) (applying Nevada law).[1]  To establish a claim of issue preclusion, Nevada requires a

23

24            [1] Federal issue preclusion law is similar.  See Littlejohn, 321 F.3d at 923 (stating that party
     seeking issue preclusion must show:  "1) the issue at stake is identical to an issue raised in the prior

25   litigation; 2) the issue was actually litigated in the prior litigation; and 3) the determination of the issue
     in the prior litigation must have been a critical and necessary part of the judgment in the earlier

26   action.")

1    litigant to show the issue of fact or law was "necessarily and actually litigated."  Kahn v.

2    Morse & Mowbray, 117 P.3d 227, 234-35 (Nev. 2005).

3            Siena has presented no evidence that the issue of the precise measure of

4    Plaintiff's past and future lost wages damages was necessarily and actually litigated

5    between Plaintiff and Smith.  Rather, the evidence surrounding the settlement agreement

6    establishes that Smith faced multi-million dollar liability far beyond his ability to pay

7    through insurance and his personal assets, and the parties had reached a good faith

8    settlement for full policy limits on all available insurance policies.  Plaintiff and Smith had

9    no need to litigate and decide the precise measure of lost wage damages because even at the

10   lesser number, Smith's potential liability far exceeded his ability to pay Plaintiff's damages

11   even after accounting for percentage of fault.  The Court therefore will deny Siena's

12   motion.

13   **VI.      MOTION FOR SUMMARY JUDGMENT - DESIGN AND**
           **CONSTRUCTION OF THE CART PATH**
14

15           Schmidt and Sema move for summary judgment asserting no genuine issue of

16   material fact remains that the golf cart path as Schmidt originally designed it and as Sema

17   originally constructed it was free from defects and did not contribute to the accident.

18   Schmidt and Sema assert the modification to the cart path, which was done at Siena's

19   direction without consulting either Schmidt or Sema, caused the accident because it was

20   sloped from right to left on a right downward turn.  Siena responds that there is no evidence

21   in the record that the modification was the defective aspect or that the modification caused

22   the accident as opposed to the path's overall design defects.  Siena contends no evidence in

23   the record establishes the accident occurred on the modified portion of the cart path.

24           No genuine issue of material fact remains that the accident did not occur on the

25   cart path as originally designed.  At his deposition, Smith marked photographs

26   demonstrating where the accident occurred, and he marked it as the modified portion of the

15

1   cart path, which consisted of a darker shaded pavement along the lighter-colored original

2   path.  (Siena Mot. on Negligence, Ex. C at 18-20; Reply Mem. of P.&A. of Schmidt-Curley

3   Design, Inc. in Supp. of Mot. for Summ. J., Exs. D, E.)  Smith testified he was on the

4   lighter pavement until he realized he needed to turn right and then he cut across the darker

5   pavement.  (Siena Mot. on Negligence, Ex. B at 62-63.)  Smith further testified the cart did

6   not flip over until the middle of the turn, and that the cart flipped on "the change in color

7   pavement on the corner there . . . ."  (Siena Mot. on Negligence, Ex. C at 18, 20.)

8   Additionally, both Plaintiff and Smith testified that the accident occurred on the portion of

9   the path which was sloped from right to left.  (Siena Mot. on Negligence, Ex. A at 13, 18;

10  Ex. B at 62-63; Ex. C at 33; Reply Mem. of P.&A. of Schmidt-Curley Design, Inc. in Supp.

11  of Mot. for Summ. J., Ex. C at 11.)  For example, Plaintiff testified that as Smith was taking

12  the turn, "the pavement sloped from right to left.  So everything indicated rolling to the

13  left."  (Reply Mem. of P.&A. of Schmidt-Curley Design, Inc. in Supp. of Mot. for Summ.

14  J., Ex. F at 11.)  The modified portion of the path sloped from right to left as compared to

15  the original cart path which sloped from left to right through the turn.  (Sema Mot., Ex. J at

16  53-54; Pl.'s Opp'n to Siena Golf LLC's Mot. for Partial Summ. J. as to the Issue of Pl.'s

17  Comparative Negligence, Ex. C Part 2 at 2-3.)

18          Further, Siena's own expert, Hurzdan, stated the path's design radius and slopes

19  as "originally designed" were safe.  (Schmidt Mot., Ex. C at 2.)  Hurzdan's report mentions

20  the modified portion of the path and notes it "has a different radius and slope component

21  [he] did not measure . . . ."  (Id.)  Thus, Hurzdan offers no opinion on the design safety of

22  the modified portion of the path.  Hurzdan concluded that "[b]ased upon the radius of the

23  original designed road and its percentage of slope," the cart path was "well within" industry

24  guidelines.  (Id. at 3.)  Hurzdan also marked a photograph indicating he understood the

25  accident to have occurred on the modified portion of the path.  (Third-Party Def. Sema Golf

26  d/b/a Sema Construction's Reply to Siena Golf, LLC's Resp. to Sema's Mot. for Summ. J.,

1   Ex. 1.)

2           Finally, Plaintiff's expert, Gogulski, concluded the path was defective, but it is

3   clear from his report that his evaluation extends to the path including the modification.

4   Gogulski's report indicates the defect in the path is the sharp downward right turn with

5   reverse slope from right to left.  (Sema Mot., Ex. H at 4.)  As discussed above, the right to

6   left slope exists only in the modified portion of the path.  It is undisputed Siena did not

7   contact either Schmidt or Sema regarding the modification and that neither Schmidt nor

8   Sema had any role in designing or constructing the modification.  (Schmidt Mot., Ex. A at

9   23.)  Thus, there is no genuine issue of material fact that the golf cart path as originally

10  designed and constructed did not cause the accident.  The Court therefore will grant

11  Schmidt and Sema's motions for summary judgment.[2]

12  ///

13

---

14      [2] Schmidt objects to Siena's opposition to Schmidt's motion.  Schmidt contends that the only
pending claim against Schmidt is Sema's third party claim, and Sema did not oppose Schmidt's
15  motion. According to Schmidt, Siena attempted to file a third party complaint against Schmidt beyond
the deadline, and Siena therefore has no pending claim against Schmidt entitling it to oppose Schmidt's
16  motion.

17      On December 14, 2004, Siena filed a third party complaint against Schmidt (Doc. #32).  Siena
voluntarily dismissed without prejudice its complaint against Schmidt (Doc. #40).  According to
18  Schmidt, it did so because the contract between Schmidt and Siena contained an exclusive forum
selection clause requiring any action arising out of the contract to be brought in another forum. (Reply
19  Mem. of P.&A. of Schmidt-Curley Design, Inc. in Supp. of Mot. for Summ. J. [Doc. #136], Wieczorek
Aff. at 1.)  The Court's scheduling order set a May 31, 2005 deadline for filing amended pleadings or
20  adding parties.  (Stip. Disc. Plan and Scheduling Order Submitted in Compliance with LR 26-1(e)
[Doc. #70].)  Siena filed a second third party complaint against Schmidt on August 9, 2005. (Def.
21  Siena Golf, LLC's Third Party Compl. Against Schmidt-Curley Design, Inc. [Doc. #80].)  According
to Schmidt, Siena's prior attorney conceded Siena filed the complaint beyond the deadline and that the
22  same contractual choice of forum clause prohibited Siena from bringing suit in Nevada. (Wieczorek
Aff. at 1.)
23
        Siena filed its third party complaint against Schmidt beyond the scheduling order deadline
24  without leave of the Court.  Siena has taken no action to suggest it believed this complaint was timely
and viable.  Despite Schmidt's failure to file an answer, Siena did not move for default.  Siena's third
25  party complaint as to Schmidt is an untimely fugitive document, and the Court will strike it from the
record.
26

1    **VI.    CONCLUSION**

2           IT IS THEREFORE ORDERED that Defendant Siena Golf, L.L.C.'s Motion for

3    Partial Summary Judgment as to the Issue of Plaintiff's Comparative Negligence (Doc.

4    #111) is hereby DENIED without prejudice.

5           IT IS FURTHER ORDERED that Plaintiff Terence Bock's Cross Motion in

6    Limine to Exclude Any Evidence of Alcohol, Bachelor Party, Gentlemen's Club and

7    Partying (Doc. #117) is hereby GRANTED in part and DENIED in part.  It is granted to the

8    extent that the Court shall exclude from trial any evidence that the bachelor party attendees

9    went to a gentlemen's club.  The motion is denied in all other respects.

10          IT IS FURTHER ORDERED that Defendant Siena's Motion for Partial

11   Summary Judgment as to the Issue of Plaintiff's Wage Loss (Doc. #112) is hereby

12   DENIED.

13          IT IS FURTHER ORDERED that Third-Party Defendant Schmidt-Curley

14   Design, Inc.'s Motion for Summary Judgment (Doc. #113) is hereby GRANTED.

15   Judgment is hereby entered in favor of Third-Party Defendant Schmidt-Curley and against

16   Third-Party Plaintiff Sema Golf d/b/a Sema Construction.

17          IT IS FURTHER ORDERED that Third-Party Defendant Sema Golf d/b/a Sema

18   Construction's Motion for Summary Judgment (Doc. #114) is hereby GRANTED.

19   Judgment is hereby entered in favor of Third-Party Defendant Sema Golf d/b/a Sema

20   Construction and against Defendant/Third-Party Plaintiff Siena Golf, L.L.C.

21          IT IS FURTHER ORDERED that Defendant Siena Golf, LLC's Third Party

22   Complaint Against Schmidt Curley Design, Inc. (Doc. #80) is stricken from the record.

23   DATED:  June 12, 2006

24

25   _____
     PHILIP M. PRO
26   Chief United States District Judge

18